665 P.2d 810

Raymond J. GONZALES, and Linda Gonzales, Plaintiffs-Appellees,

v.

SOUTHWEST SECURITY AND PROTECTION AGENCY, INC., f/d/b/a Southwest Investigative & Protective Agency, Inc., a New Mexico corporation, Defendant-Appellant,

and

The City of Albuquerque, a Municipal corporation, Fundamentals, Inc., a New Mexico corporation, Mike Sedillo, Denny Sanchez, Alex Sedillo, Ysidro Victor Vigil, aka Victor Vigil and David Chavez, Defendants.

No. 5845.

Court of Appeals of New Mexico.

June 7, 1983.

Glass & Fitzpatrick, John T. Fitzpatrick, Albuquerque, for plaintiffs-appellees.

Shaffer, Butt, Thornton & Baehr, P.C., John A. Klecan, Albuquerque, for defendant-appellant Southwest Sec. and Protection Agency, Inc.

OPINION

LOPEZ, Judge.

Plaintiff sued for damages resulting from false imprisonment, battery and negligent hiring, training, supervision and retention of certain personnel. A bench trial was had and plaintiff was awarded $15,000.00. Defendant appeals. We affirm.

FACTS

Plaintiff, Raymond Gonzales (Gonzales), sued the City of Albuquerque (City), Fundamentals, Inc. (Fundamentals), Southwest Security and Protection Agency (South-

west) and five security guard employees of Southwest. The suit arose out of an episode where Gonzales received injuries while attending a wrestling match sponsored by Fundamentals. The match was held in the civic auditorium owned by the city, which it rented to Fundamentals. Southwest was hired by Fundamentals to provide security services for the event.

Gonzales sustained a broken jaw lost four teeth in an incident involving five of Southwest's security men. He claims he was handcuffed by the security men, taken to a small room in the auditorium and beaten. The incident occurred as Gonzales and a friend were leaving the auditorium and a woman accosted him for having thrown beer during the matches. Security guards intervened and told Gonzales and his friend to leave. Once outside the auditorium the woman again accosted Gonzales' friend, setting off a substantial disturbance. When the security guards arrived Gonzales was a bystander. Nevertheless, the guards threw Gonzales to the ground, handcuffed him and took him to a small room where he was beaten. Throughout the incident Gonzales apparently was calm and did not provoke the guards.

Default judgment was entered against Southwest employees Mike and Alex Sedillo and David Chavez. At trial the City, Fundamentals and Southwest employee Ysidro Victor Vigil were found to be free of fault. Judgment in favor of Gonzales was entered against Southwest and its employee Denny Sanchez. Southwest appeals.

On appeal Southwest contends (1) that it should not be held responsible for the intentional torts of its employees; and (2) that substantial evidence does not support the trial court finding it negligent.

### POINT 1: AN EMPLOYER'S LIABILITY FOR THE INTENTIONAL TORTS OF ITS EMPLOYEES.

■ An employer is liable for the intentional torts of its employees if the torts are committed in the course and scope of employment. *McCauley v. Ray,* 80 N.M. 171, 453 P.2d 192 (1968). Whether an employee's conduct is within the course and scope of employment is a question of fact. *McCauley v. Ray, supra.* In the case at bar, the question is whether the security guards' imprisonment and battering of Gonzales was within the course and scope of their employment. In resolution of this question we note that local decisions exist regarding an employee's intentional torts, however, none address the activity of private security personnel.

The definition of "the course and scope of employment" is variable. *Tinley v. Davis,* 94 N.M. 296, 609 P.2d 1252 (App.1980). In *Miera v. George,* 55 N.M. 535, 237 P.2d 102 (1951), the court adopted the following test of whether conduct was within the course of employment:

" 'But in general terms it may be said that an act is within the "course of employment" if (1) it be something fairly and naturally incident to the business, and if (2) it be done while the servant was engaged upon the master's business and be done, although mistakenly or illadvisedly, with a view to further the master's interests, or from some impulse of emotion which naturally grew out of or was incident to the attempt to perform the master's business, and did not arise wholly from some external, independent, and personal motive on the part of the servant to do the act upon his own account.' "

55 N.M. at 540, 237 P.2d at 105.

In addition to the test delineated above, the instant case requires additional considerations because of the nature of Southwest's and the security guards' work. The Restatement of Agency addresses the use of force as follows:

A master is subject to liability for the intended tortious harm by a servant to the person or things of another by an act done in connection with the servant's employment, although the act was unauthorized, if the act was not unexpectable in view of the duties of the servant.

Restatement (Second) of Agency § 245 (1958). Comment c to § 245 adds the following:

c. **Nature of employment.** Whether or not an employment involves or is likely to lead to the use of force against the person of another is a question to be decided upon the facts of the individual case. To create liability for a battery by a servant upon a third person, the employment must be one which is likely to bring the servant into conflict with others. The making of contracts, or the compromise, settlement, or collection of accounts, does not ordinarily have this tendency. On the other hand, *the employment of servants to guard or to recapture property,* to take possession of land, or to deal with chattels which are in the possession of another, *is likely to lead to altercations, and the master may become liable, in spite of instructions that no force shall be exerted against the person of the possessor.*

(Emphasis added); *see* W. Prosser, Handbook of the Law of Torts 464 (1971); *see generally* Annot., 38 A.L.R.3d 1332 (1971).

■ In this case Southwest provided the security personnel with uniforms, handcuffs, guns, nightsticks and the authority to keep peace. Evidence at trial showed that Gonzales' injuries were inflicted, at least in part, by a guards' use of a nightstick. Moreover, Gonzales was handcuffed during the beating. We therefore have a situation where not only did Southwest's employees beat a person, but the beating was facilitated by instrumentalities provided by Southwest.

According to the foregoing facts and authority, we conclude that the trial court properly determined that the guards' conduct was naturally incident to Southwest's business. The trial court also properly determined that the guards' conduct substantially arose out of an attempt to perform Southwest's business. *Miera v. George,* supra; *see Avery v. United States,* 434 F.Supp. 937 (D.Conn.1977); *Davis v. Del-Rosso,* 371 Mass. 768, 359 N.E.2d 313 (1977); *Edgewater Motels, Inc. v. Gatzke,* 277 N.W.2d 11 (Minn.1979). Finally, from our review of the record, we hold that substantial evidence supports the trial court's find-

ing that Southwest was liable for its employees' intentional torts. *McCauley v. Ray,* supra.

POINT 2. WHETHER SUBSTANTIAL EVIDENCE SUPPORTS FINDING SOUTHWEST NEGLIGENT.

Southwest contends the trial court's finding of negligence is not supported by substantial evidence. *See Pacheco v. Martinez,* 97 N.M. 37, 636 P.2d 308 (App.1981). This argument is based on the New Mexico Supreme Court decision in *F & T Co. v. Woods,* 92 N.M. 697, 594 P.2d 745 (1979). In *Woods* the court held that defendant could not be liable for negligently hiring or retaining an employee because there was no showing that defendant's omissions proximately caused plaintiff's injuries. The principle reason proximate causation was lacking was because defendant's employee was acting outside the scope of employment, without defendant's authority and without instrumentalities provided by defendant, when plaintiff was harmed. In the case at bar, however, we have held that the guards were acting within the scope of their employment, and were using instrumentalities provided by Southwest, when Gonzales' injuries occurred. We therefore begin with a vast factual disparity between *F & T Co. v. Woods* and the case at bar.

■ The specific error alleged by Southwest is that the guards' intentional torts were neither foreseeable nor the cause of Gonzales' harm. While the terms "foreseeability" and "proximate causation" evade precise definition, the meaning of these terms is well known in the law. *See F & T Co. v. Woods,* supra. The existence of causation is ordinarily a question of fact. *Armstrong v. Indus. Elec. and Equip. Service,* 97 N.M. 272, 639 P.2d 81 (Ct.App.1981). In the case at bar the court concluded that Southwest negligently equipped, trained, supervised and retained the guards, and that Southwest's negligence was the cause of Gonzales' harm. These conclusions were based on the following findings:

12. Southwest Security did not adequately investigate the background and the character of the individual Defend-

ants herein prior to hiring them as security guards.

13. Southwest Security did not adequately supervise their security guards in general and in particular on the evening of August 19, 1979.

14. Southwest Security failed to adequately train the security guards in the use of weapons such as clubs and handcuffs which were provided to Mike Z. Sedillo, Alex Sedillo, Denny Sanchez and David Chavez.

15. Southwest Security failed to adequately instruct its employees in the proper method of restraining and arresting individuals.

16. There was at least one other prior beating of an individual by employees of Southwest Security and in particular Mike Z. Sedillo which occured [sic] at a wrestling match and Southwest Security was or should have been aware of such incident(s) and failed to take appropriate action to avoid further incident(s) of this nature.

17. The negligence of Southwest Security as specified above proximately caused the damages which resulted to Raymond J. Gonzales.

The findings quoted above are supported by evidence in the record. Testimony at trial revealed that Southwest's guards previously had mistreated people, that supervisors or owners of Southwest knew or should have known of such treatment, and that Southwest knew violence was pervasive at similar events held in the auditorium. From these facts we conclude that substantial evidence supports the trial court's findings that Southwest was negligent and that its negligence caused Gonzales' injuries. *Pacheco v. Martinez,* supra.

The judgment of the trial court is affirmed. Appellate costs are to be paid by Southwest.

IT IS SO ORDERED.

HENDLEY and BIVINS, JJ., concur.